**CHRISTENSON et al. v. GORTON–PEW FISHERIES CO.**

(Circuit Court of Appeals, Second Circuit. May 18, 1925.)

No. 331.

**1. Sales ⬉176(1)—Defaults in delivery before cancellation for delay in shipment waived by prior correspondence requesting cancellation as favor for other reasons.**

Any defaults in delivery under contract of sale before cancellation by buyer for delay in shipment *held* waived by prior correspondence inquiring as to time of delivery, culminating in request for cancellation as favor for other reasons stated.

**2. Appeal and error ⬉1033(4)—Submission to jury of waiver of defaults in delivery by correspondence and other conduct of buyer held too favorable to latter.**

Error cannot be predicated on submission to jury of question whether conduct of buyer constituted waiver of seller's defaults, where court would have been warranted in instructing a finding of waiver.

**3. Sales ⬉379—Complaint in seller's action for breach held so framed as to entitle plaintiff to rely on claim that contract was in effect at time of cancellation by buyer.**

In action for buyer's breach of contract, complaint alleging contract was in full force and effect according to its terms, and that plaintiff was still faithfully carrying out its terms as set forth in paragraphs of complaint to which it was not annexed, after attempted cancellation by defendant for delay in shipment, *held* so framed as to entitle plaintiff to rely on claim that it was in effect at time of cancellation, and hence broken by defendant; fact that it required performance at once not being pleaded.

**4. Sales ⬉81(3)—Time for shipment held not definitely fixed by phrase "at once" in contract.**

Time for shipment of fish *held* not definitely fixed by contract requiring performance "at once," where it was known when contract was made that fish had to be prepared for shipment through tropics; duration of time designated by "at once" depending on parties' intention, as shown by circumstances attending execution of contract.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, At Once.]

**5. Contracts ⬉170(1)—Parties' construction of indefinite and uncertain terms, as indicated by their writings and conduct, controlling and binding on them.**

Parties' construction of indefinite and uncertain terms in contract, as indicated by their writing and conduct, is always controlling and binding on them.

**6. Contracts ⬉176(1)—Construction for court in cases of practical construction by writings of parties.**

Where parties by their writings have committed themselves to practical construction of contract, it is for court to construe it.

8 F.(2d)—44

**7. Sales ⬉121—Buyers held to have expressly recognized in letters to seller concerning delivery that contract was in effect on dates thereof.**

Buyer entering into further contracts, though delivery had not been made under earlier contracts, and sending letters asking when delivery under first contract could be expected, without hinting breach of any of them, *held* to have expressly recognized that contracts were in full force and effect on date of such letters.

**8. Sales ⬉173—Seller not bound to ship after cancellation of contract by buyer for delay in shipment.**

There is no duty on part of seller to ship goods after cancellation of contract by buyer for delay in shipment.

**9. Sales ⬉152—Buyer of fish for shipment "f. a. s." held bound to instruct shipper as to name of ship and dock on which cargo was to be loaded.**

Under contract of sale providing for shipment "via your option," "f. a. s. [free alongside ship] New York," which means delivery at dock for ship named, it was buyer's duty to instruct seller as to name of ship and dock on which cargo was to be loaded, and statement that instructions would be given after fish reached New York was insufficient.

**10. Appeal and error ⬉1068(3)—Error in charge submitting to jury issues on which court might have directed verdict held harmless.**

Where court might have directed verdict for plaintiff on each cause of action, any errors in charge submitting issues to jury are harmless as to defendant appellant.

**11. Sales ⬉384(1)—Damages recoverable for buyer's breach, in absence of available market value for goods, stated.**

In absence of available market for fish, seller on buyer's breach, could not recover difference between contract price and market or current price when goods should have been accepted; but damages are difference between contract price and value of goods as best ascertainable, and sale price will be received as some evidence of value.

In Error to the District Court of the United States for the Southern District of New York.

Action by the Gorton-Pew Fisheries Company against Edward A. Christenson and others, doing business as Christenson, Hanify & Weatherwax, for breach of contract. Judgment for plaintiff and defendants bring error. Affirmed.

Ewing, Alley & Voorhees, of New York City (Tracy S. Voorhees, Ira A. Campbell, Frank A. Bernero, and Joseph Day Lee, all of New York City, of counsel), for plaintiffs in error.

Winthrop & Stimson, of New York City (Allen T. Klots and Arthur E. Pettit, both

of New York City, of counsel), for defendant in error.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

MANTON, Circuit Judge. This action is based upon four separate written contracts, which are alleged to have been breached by the plaintiffs in error. The issues were submitted to the jury, a breach established, and damages assessed, which make up the judgment which is sought to be reviewed by this writ of error. Each contract is for the sale of especially cured codfish. The first is dated January 23, 1920, and provides for delivery:

"Ship via: Your option.
"Ship to: New York.
"When: At once."

The second contract provides the same terms, and is dated January 24, 1920; the third for white nape codfish, dated February 2, 1920; and the fourth for white nape codfish, dated February 9, 1920. The codfish was intended for shipment to South America. Correspondence between the parties has been offered in evidence concerning the fulfillment of the contract. The first of importance is a letter of February 7, 1920, which inquired, as to the first contract, when the plaintiffs in error might expect delivery of the order. On February 9th, the plaintiffs in error wrote to the defendant in error, stating that the Gloucester office had advised that the fish would be ready for shipment the next day, but that "it is doubtful if we can get them here before Monday next, February 16th." On February 13th, the plaintiffs in error wrote, referring to the first, second, and third contract, asking advices as to just when they might expect the delivery, stating that they were anxious to get these orders under way and asked for prompt attention. Again on February 14th the plaintiffs in error wrote to the defendant in error as follows:

"The writer begs to confirm his telephone conversation with you, to the effect that you cancel our orders Nos. 236, 238, 249, and 258, covering 1,000, 800, 400, and 300 cases respectively of codfish, for shipment to South America. We regret very much having to do this, but are just in receipt of advices from our agents in which they request that we cancel at once all orders on codfish. We hope you will appreciate our position in this matter, and favor us with an acceptance of the cancellation of these orders at your early convenience."

On February 16, 1920, the defendant in error wrote to the plaintiffs in error that this request would be forwarded to their head office, but the writer doubted if the cancellation would be accepted. On February 17th, the plaintiffs in error wired the defendant in error at the main office at Gloucester, requesting the cancellation. On February 20, 1920, the plaintiffs in error wrote the defendant in error, canceling the contract, stating:

"It will be noted that shipping instructions as given and accepted by you have not been complied with, and this delay would make it impossible to place the goods at their destination within the time required; hence the necessity for the cancellaton of our orders."

[1, 2] This was the first time complaint was made for failure to deliver. Theretofore there had been inquiries as to when the goods might be shipped, and as late as February 13th there was no intimation of default as far as the defendant in error was concerned. At first the cancellation was requested as a matter of favor for reasons stated. Up to such time the contract must be deemed in full force and effect, and its obligations binding upon the parties. Indeed, if there were defaults in delivery, there was a waiver by the force of this correspondence. In submitting the case to the jury on the question of breach, the court below let the jury determine whether this correspondence and the conduct of the parties constituted a waiver. This was more favorable to the case of the plaintiffs in error than they were entitled.

[3] The complaint was so framed that the defendant in error could rely upon the claim that the contract was in full force and effect at the time of the cancellation, and therefore there was a breach of the contract. It was not necessary for the defendant in error to establish either that an extension of time was granted or that there was a waiver of any alleged default in making delivery. The contract required performance "at once," but this was not pleaded. The pleading asserted that the contract was in full force and effect according to its terms, and that there had been no breach thereof by the defendant in error. The contract was not annexed to the complaint. Its phrase is that after February 13th the defendant in error was still faithfully carrying out the terms of the contract, which was set forth in the appropriate paragraphs of the complaint.

[4, 5] No question seems to be presented as to the defendant in error being ready, able and willing to ship the goods. It was established the fish had been packed and ready for shipment on February 1st, and the only

question was whether there had been a default in failing to ship the fish. The phrase "at once" did not definitely fix the date at which shipment must have gone forward. It must have a reasonable interpretation. This fish has to be prepared for shipment through the tropics to South America, and this was known at the time the contracts were made. Some determinable duration of time must have been anticipated by the parties. What they meant as a duration of time by the phrase "at once" must depend upon the intention of the parties, and that could be obtained only by considering the surrounding circumstances attending the making of the contract. The terms being indefinite and somewhat uncertain, the construction placed upon them, as indicated by the writings of the parties and their conduct, is always controlling and binding upon them. Insurance Co. v. Dutcher, 95 U. S. 269, 24 L. Ed. 410; City of New York v. N. Y. R., 193 N. Y. 543, 86 N. E. 565.

[6, 7] The courts never construe a contract, ambiguous in its terms, contrary to the construction the parties themselves have placed upon it. The parties having, by their writings, committed themselves to a practical construction, the function to construe the contract under such circumstances is for the court. Here, it appears that the first contract was made January 23d, and the second January 24th. In spite of the fact that no delivery had been made, they entered into two other contracts, one on February 2d and another on February 9th, and on February 7th they sent a letter asking when they could expect delivery under the first contract. On February 13th they sent another letter asking concerning delivery. In neither of these letters did they say or even hint at any of the contracts being breached, and to all purposes regarded them as still in force.

[8] We must regard this as an express recognition that the contracts were in full force and effect on the dates of these letters. Their first position was a plea or request for a cancellation, and it was not until this had been denied that they insisted upon cancellation as a matter of right for breach of contract. After cancellation, there was no duty on the part of the defendant in error to ship.

[9] Another difficulty that confronts the plaintiffs in error is that the price provided was $16.50 per box f. a. s. New York—namely, free alongside ship—which we have held means delivery at the dock for the ship named. Royal Italian Govt. v. National Co. (C. C. A. N. Y.) 294 F. 23. It was the duty of the plaintiffs in error to give instructions to the defendant in error as to the name of the ship upon which the cargo was to be loaded. The defendant in error could not carry out the delivery until the shipment order naming the ship and dock was given. It is not an answer to say that instructions would be given after the fish reached New York. Fuller & Co. v. Jordon, Jr., Inc., 196 App. Div. 114, 187 N. Y. S. 595.

[10] These principles and determination applied to each of the four separate contracts. We find there was no breach as to any of the contracts by the defendant in error. The court might well have directed a verdict on each of the causes of action for the defendant in error. We need not, therefore, consider the exceptions taken to the court's charge, for no harm has been done to the plaintiffs in error.

[11] It was established that there was no available market, and therefore the defendant in error could not avail itself of the rule, in ascertaining damages, of selling in an available market and holding the contract breached for the difference between the contract price and the market or current price at the time and times when the goods should have been accepted. The codfish was sold and the sale price was considered by the jury in determining the amount of the damages. Where there was no market value, as was found below, the damages are the difference between the contract price and the value of the goods as can be best ascertained. Salem Iron Co. v. Lake Superior, etc., Co., 112 F. 239, 50 C. C. A. 213; Dolph v. Troy Laundry Co. (C. C.) 28 F. 553; Williston on Sales, sec. 583, vol. 2. In ascertaining this sum, the sale price will be received as some evidence of the value. The damages fixed by the jury won the approval of the trial court on the denial of the motion to set aside the verdict, and find support in our conclusion.

Judgment affirmed.