## CORY v. LOGAN COAL & SUPPLY CO.
### No. 5854.

Circuit Court of Appeals, Fifth Circuit.
April 1, 1931.

Rehearing Denied April 24, 1931.

Lynch, of Chattanooga, Tenn., on the brief), for appellant.

J. T. G. Crawford and Philip S. May, both of Jacksonville, Fla. (J. T. G. Crawford and Philip S. May, both of Jacksonville, Fla., on the brief), for appellee.

Before FOSTER, SIBLEY, and HUTCHESON, Circuit Judges.

SIBLEY, Circuit Judge.

Cory sued Logan Coal & Supply Company at law upon three contracts for the sale of coal, seeking damages for the refusal to accept part of the coal. After an adverse ruling upon a demurrer to the original counts of the declaration, and a refusal to allow a replication to be filed to certain pleas, and after submitting his evidence under amended counts, Cory was defeated by a verdict directed for the defendant, and he appeals, his assignments of error being directed to the three rulings indicated.

Each of the original counts set up a contract for the purchase by defendant of a certain number of carloads of coal at a certain price per ton, but alleged nothing as to how many tons were in a carload. The allegations thereby entirely failed to set forth any certain contract or any basis for estimating damages. The demurrer was properly sustained.

The amended counts alleged that, by a custom of long standing in the trade, and well known to both parties, the carloads were to be from forty to sixty tons each, and to average fifty tons. These allegations remove all uncertainty from the contract on that score, and afford the necessary quantity basis for fixing damages by the difference between contract and·market price as set out in the bill of particulars. Each amended count set up a different written contract, respectively dated July 14, 1920, July 27, 1920, and July 28, 1920, for a total of two hundred cars of coal at differing prices. The shipping date specified was "As fast as we can" on the first, and "Soon as possible" on the other two. Otherwise the contracts are alike. The other allegations of the counts are similar; quoting from the first count: "Under the terms of said contract said coal was to be shipped by the plaintiff to the defendant at Jacksonville, Florida, as fast as plaintiff was able to ship same; that in pursuance of said contract the plaintiff shipped to the defendant and the defendant accepted from the plaintiff twenty-four cars of coal; that thereupon although the plaintiff was shipping said coal as fast as was possible for him to do in ac-

Robert R. Milam, of Jacksonville, Fla., J. J. Lynch and Carter J. Lynch, both of Chattanooga, Tenn. (James J. Lynch, of Chattanooga, Tenn., Robert R. Milam and Milam, McIlvaine & Milam, all of Jacksonville, Fla., and Lynch, Bachman, Phillips &

cordance with the terms of said contract, the defendant notified the plaintiff not to ship any more of the said coal until it should advise him further to do so; that the plaintiff was at all times ready, able and willing to ship said coal in accordance with the terms of said contract, and thereafter repeatedly offered to ship, and tendered the balance of said coal, and repeatedly requested further instructions from the defendant to ship same until March 11th, 1921, when defendant positively refused to accept or pay for the balance of said coal." Besides the general issue numerous traverses were filed, denying separately that the plaintiff shipped the coal as fast as it was possible for him to do so, that plaintiff was ready, able, and willing to ship the remainder, and that defendant notified him not to ship any more until further advised to do so. During the trial of these issues, the plaintiff sought to file a replication to the pleas, the offered pleading being only an elaboration of the facts already alleged about the request to cease shipments until further notice. The court disallowed the replication to the pleas, but gave no reasons. The reason urged in argument is that the replication was a departure in pleading, an effort to set up a right of action arising by a new contract or by a waiver, in lieu of that arising from performance as set forth in the declaration. We think no such departure was proposed because the same substantial facts were set up in the declaration. The prior performance of plaintiff is there alleged rather by way of inducement introduced by an "Although," while the defendant's request for delay is directly averred. The declaration goes more positively on the allegations of requested delay than on those of prompt performance. But, if both are to be considered as counted on, either being sufficient, and therefore properly to be made the subject of separate counts, the fault is the fault of duplicity, and to be reached at common law only by special demurrer. 1 Chitty, Pleading, 228. Pleading over instead of demurring waives the defect. 1 Chitty, Pleading, 671. And the pleas, to be good, must answer both matters. 1 Chitty, Pleading, 228. In Florida, the special demurrer is abolished. Rev. Gen. St. 1920, § 2627, and duplicity is apparently to be reached by a motion for compulsory amendment if the defendant is embarrassed in his defense thereby. Section 2630. This remedy not having been followed, we think the duplicity, if any, in the declaration was waived. Had the so-called replication been offered as an amendment of the declaration, which in substance

it was, it might have been allowable. As a replication, it was not in order, because offered as a reply to pleas which set up no new matter but merely traversed the allegations of the declaration. The plaintiff in such case must join issue on the traverse and prove the truth of his declaration. There was no error in rejecting the replication.

We think the plaintiff's evidence tended to sustain the declaration and to show a right to recover. The terms of the contracts fixing the time of shipment: "As fast as we can" and "Soon as possible," require construction. We see no substantial difference in their meaning. In contracts for the sale of merchandise, a time for delivery is usually fixed, and, when fixed, is of the essence of the contract. If the contract is silent, a reasonable time is supposed by the law to have been intended. In the present contracts a reasonable time is not to be assumed because they are not silent as to time. The language used indicates a deliberate purpose not to fix a definite time, but, in recognition that there are or will be hindrances to delivery which will cause delay, the contract is to be executed "As fast as we can" or "As soon as possible," having reference to the hindrances. These hindrances are not stated in the contracts, but are made clear by the evidence of the circumstances under which the contracts were made. There was a coal miners' strike in England, and a heavy demand for American coal, coupled with a shortage of coal cars, which were being apportioned to the mines, greatly restricting the power of the mines to make delivery on time. Plaintiff was a coal broker only and not a miner, and had no stocks of coal on hand, but bought at the mines in carload lots for direct shipment to his customers, having to take such sized cars as were allocated to the mines and were by the mines delivered on his orders. By reason of the shortage in cars and coal, the price on contracts for coal for future delivery was high; and "spot coal," that is, coal already loaded on cars and ready to move, was much higher when it could be procured at all and was regarded in the trade as a separate thing from "contract coal." The mines, of course, were tempted to sell their coal as "spot coal" rather than deliver it on their contracts. The consequence was that the brokers in contracting for future coal to cover their own contracts for future delivery (contract coal) were unable to name definite times for delivery of such coal, and were customarily wording their contracts like those in suit. This wording, construed in reference to the business involved and its circumstances, and those

of the parties as above outlined, was intended to relieve the seller from delivery at any particular time, but to require that he use diligence and good faith in placing contracts. on his part to cover the coal and in securing prompt delivery of it to the defendant. Compare Pope v. Filley (C. C.) 9 F. 65; Virginia Iron, Coal & Coke Co. v. Woodside Cotton Mills Co. (C. C. A.) 6 F.(2d) 442; Christensen v. Gorton-Pew Fisheries Co. (C. C. A.) 8 F.(2d) 689; Albert v. Young, 80 Neb. 677, 114 N. W. 936; Williams v. Gridley, 110 App. Div. 525, 96 N. Y. S. 978.

This obligation did not extend to the buying of "spot coal" to fulfill the contracts, for that was in the trade a distinct commodity, and not contemplated by the contracting parties. This conclusion is fortified by the fact that, pending the execution of these contracts, the plaintiff sold and delivered to defendant a number of cars of "spot coal" at a higher price, with no contention that they should be applied on these contracts. Under this construction of the contracts, the evidence tended to show that, prior to September 28, 1920, plaintiff had exercised diligence and good faith, although a little less than half of the total number of cars had been delivered. The fact that more in proportion had been credited on the two contracts carrying the higher price does not rebut good faith, because no ultimate gain to the plaintiff or loss to the defendant could result. Had the cars been credited on the cheaper contract, the purchase money then collected would have been less, but the damages now due would be correspondingly greater. Moreover, the defendant by payment without protest consented to the crediting as made. The confessed inability to deliver all the coal prior to September 28, 1920, shown to be due to the hindrances above outlined, did not negative the plaintiff's ability to deliver in accordance with the terms of the contracts; that is, as fast as possible. Complete delivery became possible in October, and was then offered by a request for shipping instructions, and continuously afterwards. The serious trouble comes with the admission that between July 14 and September 28, 1920, plaintiff had handled more than two hundred cars of contract coal, and had allowed much of it to be prorated to other customers having similar contracts. In a sense, it would have been possible to have delivered all this coal to the defendant, but the testimony is that the defendant knew when its contracts were made that plaintiff was a broker, having many customers with as much right to claim prompt delivery as the defendant, and that the plaintiff's obligation to these would form some part of the extraordinary situation contemplated in agreeing to a delivery "as soon as possible." Perhaps the customers ought to have been served in the order of their contracts, but the evidence does not show that the defendant would have thereby gotten more coal. So it might indicate want of diligence or good faith for the plaintiff to take on new contracts after having bound himself to the defendant, but that he did this does not appear. The bare fact that plaintiff applied the equitable rule of equality to all persons having, so far as appears, equal claims to his diligence and good faith, does not as a matter of law defeat him.

If, however, the plaintiff's conduct before September 28, 1920, be found to be a breach of his obligation, nevertheless on that date defendant, without any expression of discontent at the slowness of delivery or of any purpose to discontinue the contracts, wrote plaintiff that it was "advising all shippers to discontinue shipments until further notice on account of an embargo impending at Jacksonville, therefore I must ask that you do not ship any more coal until I advise you." Coal previously sent was paid for without complaint. On October 15th plaintiff asked for shipping instructions, as the mines were pressing to deliver. Defendant replied: "Account of congestion and possible embargo cannot give shipping instructions at the present time." Coal had then become plentiful, and the price was falling, and plaintiff continued to seek to deliver until on March 11, 1921, when the contracts were repudiated by defendant. Under this evidence, uncontradicted and unexplained, it must be concluded that, if the defendant on September 28, 1920, had a right to discontinue the contracts because of delay, it waived the right and elected to continue them, and requested a further delay until it should advise otherwise. This invited, if it did not require, the plaintiff to maintain his arrangements to deliver the coal sold, and prevented his reselling it to save himself from loss by a falling market. Whether on principles of waiver, election, or promissory estoppel (Williston on Contracts, §§ 856, 683, 688, 691), it is plain that the defendant cannot, after maintaining this position till the coal market broke, then change front and claim that the contracts were at an end on September 28th. See Christensen v. Gorton-Pew Fisheries Co. (C. C. A.) 8 F.(2d) 689; Pitch Pine Lumber Co. v. Wood Lumber Co., 57 Fla. 140, 48 So. 993; Mizell v. Watson, 57 Fla. 111, 49

So. 149. If there be a commingling of two causes of action in the declaration, and if the proof fails as to one, the court may not ignore the other which the evidence supports. Page v. Page, 43 Wash. 293, 86 P. 582, 6 L. R. A. (N. S.) 914, 117 Am. St. Rep. 1054. A verdict should not have been directed for the defendant.

Reversed for further proceedings.