## WILLIAMS v. PENN MUT. LIFE INS. CO. OF PHILADELPHIA, PA.

### WILLIAMS et al. v. SAME.

(District Court, S. D. Florida. May 30, 1925.)

Nos. 53, 86.

1. **Cancellation of instruments ⬤⟹23—Cancellation will not be decreed where defendant has surrendered rights to which he cannot be restored.**

Where defendant has foregone or lost a right to which he cannot be restored on the cancellation of an agreement procured by fraud, a court of equity will not decree cancellation.

2. **Election of remedies ⬤⟹15—Election between legal and equitable remedy binding.**

A party having a remedy in equity by suit for cancellation of an instrument, and at law by an action for damages on affirmance of the instrument, is bound by an election between them.

3. **Cancellation of instruments ⬤⟹34(1)—Delay in commencing suit held to defeat right to cancellation.**

Life policies gave insurer the right to contest liability within one year for false representations by insured, but were incontestable after one year. Insured died within the year, and the beneficiary accepted a settlement and executed a release, alleged to have been procured by fraud. *Held*, that a court of equity would not decree cancellation of the release in a suit not commenced until more than a year after its execution and discovery of the fraud.

In Equity. Suit by Simon F. Williams, as administrator of the estate of Martha S. Painter, deceased, against the Penn Mutual Life Insurance Company of Philadelphia, Pa. On motion to strike paragraphs of answer. Denied.

Stewart & Stewart, of De Land, Fla., for complainant.

Knight, Thompson & Turner, and James F. Glen, all of Tampa, Fla., for defendant.

CALL, District Judge. The bill of complaint in this case was filed November 27, 1914, and is brought for the purpose of canceling a certain release executed by the complainant on a certain insurance policy on the life of her husband, which was issued by the defendant on February 24, 1913; the grounds set up being fraud in procuring such release. After alleging the death of the insured, Edward O. Painter, which occurred on the 22d day of May, 1913, the bill alleges that the defendant had issued three policies on the life of Painter, one for $50,000, one for $47,000, and one for $3,000. It then alleges that certain agents of defendant approached the complainant with an offer of settlement of all of these policies, and made certain representations through which complainant was induced to execute the release on the $50,000 policy, which release is sought to be canceled in this suit.

The representations made by William Thompson were: That the writer of one of the policies was out of the city, and therefore he (William Thompson) was employed to make the proposition for settlement. That through the efforts of certain Masons an agreement had been brought about between all of the companies having policies

on the life of Painter, except one or two, with reference to a plan for the settlement of all of the policies. That Gill was one of the head men of the defendant, and had accomplished much in the arrangement with the other companies, and such agreement was in Gill's hands. That, well knowing the desire of complainant to gain possession of the vital organs of her husband, which had been shipped to Baltimore, the suit then pending in that city over the possession of said vital organs was controlled by defendant, and that such suit would be stopped by the defendant if the proposed settlement was consummated, and said vital organs would then be turned over to her possession. That if said proposition was accepted the other companies would pay in full the policies on the life of said Painter. That a writing signed by said Thompson was delivered to complainant, which was as follows: "This is to certify that I am fully informed that the settling of the policies of E. O. Painter with the Penn Mutual will result in the following companies paying in full: Mutual Life, New York Life, Union Central, and Equitable Life; there being a written agreement to this effect which I have read. [Signed] W. Thompson." That said Thompson urged repeatedly a speedy decision, so that the matter might be settled by noon of the day prior to the hearing of the suit in Baltimore over the possession of the vital organs of Painter. That said Gill, an agent of defendant, over the telephone, vouched for the veracity and reliability of said Thompson.

The settlement proposed, and which the complainant relied upon and, believing the representations of Thompson, accepted, was that the defendant would pay in full a policy for $3,000, would return the cash premium of $1,160 paid by Painter on another policy, and certain premium notes given by Painter for premiums amounting to $2,331.-20, while the oratrix and her daughter should execute releases of all the policies issued by the defendant on the life of Painter.

This proposition was finally accepted, and the moneys paid by, and the premium notes surrendered by, the defendant, and the releases executed by complainant and her daughter on June 23, 1913. The bill then alleges that the companies mentioned would not pay said policies in full, but were defending the suits brought to enforce the payment of same; that the suit in Baltimore was not dismissed, but had been prosecuted to the Supreme Court of the United States, where it is still pending. The prayer of the bill is for cancellation of the release, for an injunction, and for an accounting of what is due complainant on said policy.

On the death of complainant, Martha S. Painter, the suit was on July 25, 1924, revived in the name of Simon F. Williams, as administrator of complainant, and on August 18, 1924, an amended and supplemental answer was filed by defendant. The allegations of this answer are directed to five defenses to the cancellation of the release sought in the bill: First, that under the policy mentioned in the bill it had the right to contest the policy within one year from its date for false answers to material questions in the application for the policy, and the complainant, by waiting until after the expiration of the one year from the date of the policy and some eight months after executing the release, deprives the defendant of this defense; second, that the contract of insurance provided that suicide within one year from the date of the policy would limit the amount of the recovery to the annual year's premium paid therefor and that said premium had been returned; third, that by the lapse of time, the disappearance of witnesses, etc., it is now impossible to make proofs; fourth, that complainant had abandoned this suit by instituting an action at law against this defendant to recover damages for the fraud set up in the bill, which after the death of complainant was dismissed; and, fifth, that, it being impossible to place the defendant in status quo, equity will not now decree cancellation.

The complainant filed exceptions to this answer for insufficiency. Under rule 33 of the Equity Rules, effective February 1, 1913, exceptions for insufficiency were abrogated, but may be tested on motion. A motion to strike was filed, and the hearing was had upon that motion. The motion is directed to each paragraph specifically, but I shall not attempt to discuss each paragraph of the answer and the motion directed to it. I will confine myself to the defenses sought to be made in the answer as a whole.

[1] As I understand the law, where a defendant has foregone or lost a right to which it cannot be restored on the cancellation of an agreement procured by fraud, a court of equity will not decree cancellation. Many of the paragraphs of the answer attacked by the motion are to show the facts upon the claim that the defendant has lost the right to contest the validity of the policy on account of the false material answers to questions propounded in the application, and the granting of any one of these motions directed to these paragraphs would so emasculate

the answer as to deprive the defendant of this defense. By the terms of the policy the right to contest the policy for this cause is limited to one year from its date. After the expiration of one year it becomes incontestable, except for the nonpayment of the first year's premium. Other paragraphs are directed to show that suicide within the first year would authorize the defendant to return the premium and escape further liability. This right the defendant has been deprived of by the dispersion of witnesses and consequent loss of testimony.

[2, 3] Other paragraphs set up facts to show that the complainant elected to ratify the release and recover damages for the fraud charged and her representative cannot now abandon that election and ask the court for the cancellation of the release for fraud. As I understand the law governing this last phase, it is that one having two remedies must make his election promptly, and having made it abide by that election. Under this principle the paragraphs attacked by the motions are material and relevant. Most of the paragraphs challenged by the motions bear upon the question that the defendant cannot be placed in status quo in event the release should be cancelled at this late day, and if they are true (and they must be taken to be true on this hearing) the complainant cannot have the relief prayed in the bill.

In the instant case the policy was a 15-year policy, issued February 24, 1913, and Painter's death occurred May 22, 1913; the release was executed June 23, 1913, and suit for cancellation filed November 27, 1914. The answer alleges that within some 10 days after the execution of the release the complainant was made aware of the falsity of representations complained of. She remained quiescent and did nothing, by either returning the money paid and the notes delivered up, but retained these until the filing of the bill of complaint in November, 1914. This is not using due diligence to disaffirm the release. Miller v. Rush (C. C. A.) 276 F. 644; Grymes v. Sanders et al., 93 U. S. 62, 23 L. Ed. 798. It seems to me that, under the rules of law governing in cases of this kind, the delay is too long to entitle the complainant to have the relief of cancellation.

The motions to strike the paragraphs of the answer will therefore be denied.

There is another case, No. 86 Equity, by the complainant and her daughter as heirs at law of E. O. Painter, filed March 12, 1916, seeking cancellation of a release of another policy issued April 18, 1913, submitted at the same time as the instant case, in which the same questions arise. The same order will be entered in No. 86 Equity.