PEARSON, TILLMAN, Judge.
The appellant, Michael E. Zapetis, was the defendant in three chancery actions brought by the appellee, B. B. Wills. Ap-pellee, G. G. Wills, was plaintiff in one of these actions. Zapetis was the plaintiff in a chancery action brought against B. B. Wills. These causes were all pending at the same time in the Circuit Court of the Eleventh Judicial Circuit and grew out of a series of business transactions between *34 the appellant and the appellees. In general, relief sought was an accounting between the parties as to the profits made upon joint ventures in which B. B. Wills supplied the capital and Zapetis the contracts for the purchase and salvage of surplus naval craft.
The complaints came to issue and were consolidated for trial. They were referred to a special master to hear the testimony, receive evidence, take an accounting between the parties and report the testimony and his recommendations to the court. After full hearings, the special master made his report, finding against Zapetis in each case in which he was defendant and recommending the entry of monetary decrees in each instance.
Zapetis, the appellant (then defendant) filed exceptions to the master’s report. One is pertinent to this appeal and is as follows:
“1. The master invalidated the contract between the parties dated November 2, 1959, (Master’s Report page 9) on the ground that Zapetis had not paid the amount of $4,550.00 by December 28, 1959 to Wills pursuant to the agreement. The master erroneously invalidated this contract on the following grounds:
“a. A party cannot unilaterally rescind a contract after part performance of the other party. In the instant case, Zapetis had partially performed by releasing his interest in the APV-10 pursuant to the agreement.
“b. At the time the $4,550.00 was due from Zapetis to Wills, Wills was obligated to Zapetis for repairs to the LCU-1538 (Master’s Report page 8) in an amount which the master found to' be $7,143.57 (Master’s Report page 10). Accordingly, at the time the money was due (December 28, 1959), Wills was obligated to Zapetis in an amount greater than the obligation of Zapetis to Wills, thus effecting a set off.”
The chancellor denied the exceptions (except in one respect not important here) and entered a decree in accordance with the recommendations of the special master. This appeal followed and Zapetis urges as the principal point on appeal that the court erred in denying the exception to the special master’s report above quoted.
The appellant has furnished us with an extensive brief and a proper appendix, but even with this help we have found the lengthy record difficult. The appellee has failed to favor the court with a brief. While such a failure in no way obviates the presumption of the correctness of the decree, still it has increased the difficulty of the appeal and should be mentioned.
Such facts as are reflected by the record and are necessary for a decision are set out in the special master’s report. It must be borne in mind that the point on appeal with which we here deal is directed to only one of the cases considered by the special master. That case was No. 60C-5132 in the Circuit Court. The special master found as follows:
“The Defendant Zapetis induced B. B. Wills to purchase a craft known as LSMR-535, for which Wills paid the Navy $38,666.00. Zapetis was to receive 30 per cent of the net profit received from a sale of the vessel or its parts. Two engines were sold from the vessel for $35,000.00, which Wills received. In November 1959 Wills agreed to convey all of his interest in the LSMR-535, provided Zapetis paid him $4,550.00 by December 28 of that year. The testimony shows that for many months thereafter Wills would have been willing to convey the vessel but Zapetis failed to pay the agreed consideration.
“Zapetis removed everything usable from the vessel and sold the hull to *35 Bone-Schulz for $17,000.00 (T. 276); miscellaneous scrap which he admitted might be worth $5,000.00 (T. 279); a Jaeger power winch for $1,400.00 (T. 279); a compass for $1,300.00 (T. 280); a capstan, anchor and chain, for which he admitted he might have received $2,000 (T. 280); propellers and shafts for $500.00 and a boiler for $600.00 (T. 281); water stills for $650.00 (T. 282) ; four generators for $7,500.00, portholes for $500.00, watertight doors for $1,000.00 (T. 282-283); and miscellaneous brass, for which he admits he might have received $2,000.-00 (T. 284). Zapetis kept the proceeds of all sales except the two engines.
“In addition to the foregoing sales, Zapetis received as the proceeds of a charter, $2,485.02, which he retained (T. 676). However, Wills received $2,000.00 as the net proceeds of a libel on the LSMR-535 (T. 680).
* * * ‡ # *
“I find that Zapetis received and retained $41,935.02 from the sale of the hull, scrap, winch, compass, capstan, anchor, chain, propellers, shafts, a boiler, water stills, generators, portholes, doors, brass and charter fees of the LSMR-535, which was owned by B. B. Wills and Wills Line, Inc. Zapetis also received $35,000 from the sale of two engines from the vessel, but this was turned over to Wills. The total proceeds of sales were $76,-935.02. The cost of the vessel was $38,-666.00; therefore, a net profit was realized in the amount of $38,269.02, of which Zapetis was to receive 30 per cent, or $11,480.71. Wills realized $2,-000.00 net from a libel. Zapetis should be charged $76,935.02, less a credit of $48,480.71. Therefore, B. B. Wills and Wills Line, Inc., are entitled to a decree against the Defendant Zapetis in the amount of $28,454.31.”
A reference to the record on appeal discloses the written contract referred to by the special master. The full agreement reads as follows:
“November 2, 1959
“In consideration of the sum of $1.00 and other valuable considerations, it is mutually agreed between Michael E. Zapetis and B. B. Wills as follows:
“1. That upon the delivery to B. B. Wills of the instrument releasing Michael Zapetis interest in the Seaplane Tender APV-10 and the amount of $4,550.00 plus interest from the date of this letter at 6% per an-num. The said B. B. Wills will then in return give to Michael E. Zapetis an instrument conveying all the right, title and interest of B. B. Wills into LSMR-535 its title, fixtures, furniture, etc. Payment shall be made by December 28, 1959.

s/ Michael E. Zapetis
s/ B. B. Wills
“Witnessed by
s./ Thomas E. Lee, Jr.
s/ Wm. W. Charles
THIS INSTRUMENT TERMINATES ALL DEALINGS ON THE TWO VESSELS.”
It is apparent from the special master’s report that he treated this instrument as an executory contract which was never performed; and he, therefore, held as a matter of law that the parties stood as to their rights in the LSMR-535 as though the contract had never been made. We think that in this conclusion the special master was mistaken, and the trial judge committed error when he denied appellant’s exception to the special master’s report which was directed to the error of the special master.
It is a general rule of contract law that when parties substitute contract rights *36 for property rights which they would otherwise have in certain property, in the absence of the intervention of a court upon the grounds of fraud, mistake or some other ground for equitable relief, the new rights stand in the place of the old and courts will give effect to the intention of the parties manifested in the unambiguous wording of the contract. See Gendzier v. Bielecki, Fla.1957, 97 So.2d 604. It is apparent that the parties resolved all questions regarding the two vessels by the contract. Their patent intention is indicated by the language in capital letters at the end of the instrument: “THIS AGREEMENT TERMINATES ALL DEALINGS AS TO THE TWO VESSELS.”
Each party was justified in treating the respective vessel as his own property after the agreement. The evidence discloses that this was done, and Zapetis proceeded to scrap the LSMR-535 while Wills towed the APV-10 to his docks. The conduct of the parties was entirely consistent with the terms of the contract. Cf., Lalow v. Codomo, Fla.1958, 101 So.2d 390, 393. Pursuant to his conclusion that the rights under the contract should be disregarded, the special master did not recommend a provision in the final decree to preserve the interest of Zapetis in the APV-10. Such a provision would have been necessary under the rule that rescission calls for placing the parties in status quo, and where restoration is not or cannot be made, such relief is generally denied. Coast Cities Coaches, Inc. v. Whyte, Fla.App.1961, 130 So.2d 121. It therefore follows that the contract could not be rescinded by enforcing Wills’ interest in the LSMR-535 and at the same time eliminating Zapetis’ interest in the APV-10. The weight of the evidence is that the parties considered the contract of November 2, 1959, as having been substantially executed by the delivery of the vessels for which they contracted to the respective parties. There remained a debt owed by Zapetis to Wills of $4,550.00, plus interest of 6% from November 2, 1959, to judgment. Thus, the chancellor should have awarded the appel-lee, B. B. Wills, the sum of $4,550 with interest thereon from November 2, 1959, to the date of the final decree, rather than the sum of $28,454.31.
In view of the opinions herein expressed, it will be necessary to enter an amended final decree which will reduce the amount found to be due from Zapetis to Wills by the difference between the $28,454.31 found due in cause 60C-5132, and the $4,550.00, with interest, as above quoted.
The appellant has presented another point which is directed to a finding of fact of the special master as to the dealings on another vessel. We have considered this point and find that the factual conclusion of the special master is supported by evidence in the record and therefore the chancellor correctly denied an exception directed to it.
The final decree appealed is affirmed in part and reversed in part and the cause is remanded for the entry of an amended final decree in accordance with the views herein set forth.
Affirmed in part and reversed in part.