**Hoyte GENTRY and N. R. Johnston, Plaintiffs-Appellees,**

**v.**

**William R. SMITH, Defendant-Appellant.**

**No. 72-2903.**

United States Court of Appeals, Fifth Circuit.

Nov. 20, 1973.

F. Lawrence Matthews, Miami, Fla., for defendant-appellant.

Aaron Podhurst, Robert Orseck, Miami, Fla., for plaintiffs-appellees.

Before WISDOM, GEWIN and CLARK, Circuit Judges.

WISDOM, Circuit Judge:

This diversity contract action involves questions of rescission and assessment of damages under Florida law, and proper joinder of parties under the Federal Rules of Civil Procedure. William Smith, defendant-appellant, agreed to purchase from plaintiffs-appellees, Hoyte Gentry and N. R. Johnston, their stock in American Motor Inns of Florida, Inc., a Florida corporation which had as its sole asset a motel in Fort Lauderdale. As putative purchaser, Smith was in possession of the motel for seven months. He appeals from the district court's judgment that the contract of sale for the corporate stock was rescinded or abandoned by mutual consent. Smith also appeals from the court's judgment awarding Hoyte Gentry and N. R. Johnston $65,000 in damages for taxes, supplies, and other obligations incurred by Smith during his possession. In addition, Smith contests the failure of the trial court to join the corporation as a party to this action, and the refusal to award him damages for expenses he incurred while he was in possession of the motel. We affirm the district court's decision as to mutual rescission, but reverse on the issue of damages, and remand the cause to the district court for a full accounting. The district court may join the corporation as a party or may consolidate this proceeding with another now pending between Smith and the corporation.

## I.

William R. Smith, a resident of Columbus, Ohio, has had extensive experience in the management of motels and restaurants. Perhaps with this in mind, C. K. Moffitt, as agent for Hoyte Gentry and N. R. Johnston, defendants, first approached Smith in 1968 with a proposal that he purchase the All-American Motor Inn of Fort Lauderdale, Florida. Gentry and Johnston owned all of the stock in American Motor Inns of Florida, Inc. After protracted negotiations, a contract of sale was entered into on September 12, 1969 (dated September 17, 1969), whereby Gentry and Johnston, as sellers, each agreed to convey to Smith, as purchaser, 1750 shares of the capital stock of the corporation, a total of 3500 shares. Under the agreement, the sellers' remaining 6500 shares were to be transferred as treasury stock to the corporation, which was also a party to the contract. In consideration of his accession to ownership of the corporation and control of the motel, Smith agreed to assume certain corporate obligations, and to deliver to the sellers a promissory note in the amount of $1,000,000, less the sum of the mortgage obligations that he assumed. The note was to be payable in installments over a five year period.

No closing was ever held, and neither stock nor negotiable instruments changed hands. Smith, however, took possession of the motel on September 15, 1969, and operated it thereafter until April 3, 1970. During this period, the sellers continually attempted to induce Smith to close the transaction, but he refused to do so. He did assume full control of motel operations, opened a bank account in the name of the corporation, and listed himself as president. Even before taking possession, Smith had obtained two franchising agreements pertaining to the All-American Motor Inn, but executed by William R.

Smith personally. Although the sellers had not given Smith permission to represent and negotiate for the corporation in this manner, they did not demonstrably oppose his doing so. Rather, their efforts, through correspondence, telephone conversations, and repeated meetings in Columbus and Fort Lauderdale, were directed to setting a date for closing. Smith refused to close, however, until the sellers repaired the motel central air conditioning unit; placing the air conditioning in proper working order was, Smith insisted, the sellers' obligation under the contract, and a condition precedent to closing.

Throughout the negotiations, the motel air conditioning system and its various malfunctions served as the prime source of contention,[1] Smith steadfastly refusing to close until the sellers repaired it fully. At each meeting of the parties, the sellers attempted to settle the dispute by offering to allow Smith to deduct a fixed amount from his first installment to cover the cost of repair of the air conditioning unit, a course of action clearly contemplated by the contract. Gentry and Johnston allege, though Smith denies it, that at a meeting in Columbus on March 3, 1970, they even offered to waive entirely the $25,000 first installment that was due March 31st. Whatever the amount of this proposed settlement, Smith rejected it, and the sellers' attorney shortly thereafter demanded an immediate closing. The parties met again in Fort Lauderdale on April 3, 1970, and were again unable to close, although Smith maintains, and it is not controverted, that they agreed to meet on April 7 to conclude negotiations, and tentatively scheduled the closing for April 9.

The April 7 meeting was never convened. On April 4, after Smith had returned to Ohio, the sellers repossessed the motel. It is undisputed that the repossession was peaceful, and that it was

---

1. There was also a dispute as to the provision in the contract obligating the sellers to reimburse the purchaser for television sets and other furniture lost or damaged prior to the purchaser's assumption of possession on September 15, 1969. This disagreement seems to have been secondary however.

accomplished without benefit of legal process.

On April 6, 1970, Gentry and Johnston filed a complaint in the United States District Court for the Southern District of Florida, alleging breach by Smith of the contract for the sale of the stock of American Motor Inns of Florida, Inc. Smith counterclaimed for breach of contract, and sought specific performance as well, a claim he later dropped. A non-jury trial was held in December 1971, and the court's findings of fact and conclusions of law were submitted on March 13, 1972. On April 26, 1972, the defendant Smith was permitted to substitute counsel, and on May 15, through his new attorneys, he moved to join American Motor Inns of Florida, Inc., not previously a party to the action, as a plaintiff-counterdefendant. Smith had made no earlier motion to join the corporation, and had previously opposed its joinder. He now also sought to amend his counter claim to state a cause of action in quasi-contract against the corporation. Both of these motions were denied by the district court, and final judgment was entered dismissing the counterclaim, declaring the nullity of the contract and awarding $65,043.98 in damages to the plaintiffs for expenses incurred as a result of Smith's period of control. It is from this judgment that Smith appeals.

## II.

■ The ironic aspect of this controversy is the manner in which each of the parties accuses the other of neglecting to utilize proper legal remedies and the mechanisms of the courts, yet fails to examine his own position for the same infirmity. Both Smith on the one hand, and Gentry and Johnston on the other, relied on self-help rather than legal

process as a means of contract enforcement. In neither case, the district court concluded, can self-help be justified; it found the contract to have been breached by both parties and, therefore, abandoned and rescinded by mutual consent. Our review of that determination is governed by the strict standard set out in United States v. United States Gypsum Co., 1948, 333 U.S. 364, 394–395, 68 S.Ct. 525, 542, 92 L.Ed. 746, 765–766: Reversal of a district court's factual decision is proper only where its findings of fact are "clearly erroneous".

■ As to the findings of breach by each party, the *United States Gypsum* standard was clearly met. Although both the appellees and the appellant contest the district court's finding on this issue, they do agree that if both breached the contract, the lower court's finding of rescission by mutual consent is correct, and the contract ought not be enforced. Such appears to be the law of Florida. See McMullen v. McMullen, Fla.Ct.App.1966, 185 So.2d 191, 193; Cox v. Grose, 1929, 97 Fla. 848, 122 So. 513, 515.[2] Thus the only controversy as to this phase of the case is whether the district court erred in the finding of breach by each party. We hold that the court was correct.

■ The contract of sale specified no time for performance, and set no date for a closing. In such contracts, the law will imply a reasonable time for performance, in an attempt to give effect to the intention of the parties. Cory v. Logan Coal & Supply Co., 5 Cir. 1931, 48 F.2d 28, 30 (dicta); Florida Power & Light Co. v. Atlanta G. & P. Co., 5 Cir. 1930, 38 F.2d 948, 949. What constitutes a reasonable time for performance will depend on the factual context of the contract and the circumstances of the parties to it, as viewed by the trial

2. The thrust of the *McMullen* and *Cox* opinions is that while one party's unjustified refusal to comply or proceed with a contract cannot itself constitute a rescission, it may be viewed as an offer to rescind. The other party can complete the rescission by either acquiescing in the first party's refusal to close or by declaring that the contract is at an end. Here, if, as the trial court held, Smith's refusal to close was unjustified, the seller's repossession of the motel was an unequivocal acceptance of what under Florida Law amounts to an offer to rescind.

court. National Exhibition Co. v. Ball, Fla.Ct.App.1962, 139 So.2d 489, 493; see Rosenthal, Remedies in Disputes Arising Out of Agreements· to Buy and Sell Businesses, 12 B.C.Ind. & Comm.L.Rev. 825, 833–34 (1971). One key factor in determining the reasonableness of any delay in performance is whether time is of the essence to the contract. Clearly, time was not initially essential here, but Florida courts have held that even where the contract is silent on the subject, once a reasonable time for performance has passed, time can be made of the essence by the party not in default demanding that the defaulting party discharge his obligations. National Exhibition Co. v. Ball, 139 So.2d at 493; Chabot v. Winter Park Co., 1894, 34 Fla. 258, 15 So. 756, 758.

■ Here, the contract was executed on September 12, 1969, and Smith, the purchaser, assumed possession of the motel three days later. Smith began immediately to act as if the transaction had been completed, designating himself as president of the corporation and taking over complete management of the motel. This alone would tend to indicate that an early closing was anticipated. Yet more than six and one-half months after the contract date, no closing had taken place. The last meeting of the parties occurred several days after March 31, 1970, the day the first $25,000 installment was due under the terms of the contract. It is apparent that a closing was reasonably contemplated long before this. Yet Smith refused to close, despite repeated requests by the sellers. If time was not initially of the essence in this agreement, Smith's protracted delay in the face of the sellers' insistence that he perform, made time of the essence, and his refusal to close, a breach.

Smith makes three replies to this analysis. He contends, first, that the district judge did not find that he *refused* to close, but merely that he *failed* to do so; second, that the trier of fact made no finding that his delay was unreasonable; and third, that his unwillingness to close was justified under the contract by the failure of the sellers to repair the motel's air conditioning system. His first two contentions are disposed of by the very district court findings he seeks to rely upon: "In fact a breach of the contract did exist for a considerable period of time because the buyer did not close or tender a closing." Under the applicable Florida law, this is tantamount to a finding that the appellant *did* refuse to close and that his delay in doing so *was* unreasonable. Savage v. Horne, 1947, 159 Fla. 301, 31 So.2d 477, cited by the appellant in support of his position, is not to the contrary. Although it is true, as the court there asserted, that "[a] mere suggestion that performance of the contract be delayed to a future time is not a repudiation of its obligations nor ground for rescission",[3] the clear import of the district judge's findings is that Smith's noncompliance was more than "a mere suggestion" of delay, and in fact constituted a breach. Since that finding is not "clearly erroneous", the Savage v. Horne "suggestion" standard is inapplicable.

■ Smith presses the contention that he was not obligated to close until the sellers put the Inn's air conditioning in proper working order, as required by Paragraph Nine of Part I of the contract. That provision does not support his assertion:

9. Sellers agree that the air conditioning will be in good working order when possession is delivered to Buyer. Should there be any substantial trouble or problem with the air conditioning arising after Buyer goes into possession, then such air conditioning problem can be corrected by Buyer, the cost of the same to be charged against Sellers' first $25,000 obligation described ˙ hereinbelow. Provided, however, that Sellers

3. 31 So.2d at 482, quoting Black on Rescission and Cancellation, Vol. I, 2d Ed., ¶ 202.

shall be given immediate notice of such defect and shall be obligated only for such defects arising within a reasonable time after closing, which reasonable time shall not exceed thirty days.

As the district court observed, Smith, as purchaser, is expressly provided with a legal remedy under the contract, should the air conditioning fail. Nowhere does the contract require the sellers to repair the air conditioning. Smith's remedy was to have the unit repaired and to deduct from the first installment the cost of those repairs. Thus, his refusal to close, far from being justified by the contract, constituted a breach of its terms, as the district court correctly concluded.[4]

We also affirm the district court's determination that, by their self-help repossession, the sellers breached the contract and that it was thereby rescinded. Gentry and Johnston argue that since the contract specifically authorized them to repossess the motel in event of a breach by Smith,[5] and in that the repossession was peaceful, they know of no rule of law under which they might be held to have breached the contract. Yet Florida's policy on such self-help repossession is clear:

> It is elementary that no person has the right to forcibly enter premises in the possession of and occupied by another, whether the person occupying the premises happens to be in the premises or absent therefrom at the time. The law provides an adequate and speedy remedy for the acquisition of possession of premises which are wrongly held by another. . . .

Adelhelm v. Dougherty, 1937, 129 Fla. 680, 176 So. 775, 777.

Adelhelm is all the more persuasive because the repossession attempted there was also peaceably accomplished while the tenant was not at home. This policy against self-help repossession is also embodied in statute. Florida provides a remedy for a party ousted from possession without legal process:

> No person who enters without consent in a peaceable, easy and open manner into any lands or tenements shall hold them afterwards against the consent of the party entitled to possession thereof.

Fla.Stat.Ann. § 82.02 (Supp.1973). "Entitled to possession" has been construed to include any right of possession, and it is immaterial whether the plaintiff in such an action had the *legal* right of possession or not. Floro v. Parker, Fla.Ct.App.1967, 205 So.2d 363, 366.

---

4. Appellees Gentry and Johnston expend much energy in mustering authority to demonstrate that Paragraph Nine should be viewed as an independent rather than a dependent covenant and that, therefore, their failure to comply with its tenets would constitute no ground for the purchaser's refusal to perform. See, e. g., Steak House Inc. v. Barnett, Fla. 1953, 65 So.2d 736, 737–738; Walker v. Close, 1929, 98 Fla. 1103, 125 So. 521. Yet there is no reason to reach this issue. By its terms, Paragraph Nine requires no more than that the sellers be prepared to accept a first installment diminished by any amount reasonably expended by the purchaser to repair the air conditioning unit. Since the sellers were always willing to do this, the question whether Paragraph Nine is dependent or independent is irrelevant.

5. Part XI of the contract provides:
   Should Buyer be in default of the obligations under the terms of this agreement, Sellers can declare the same void at Seller's option and retake possession of such property with or without a necessity of legal action. If Buyer is in default and Sellers have elected to declare the same void, Buyer agrees to vacate said premises and return possession to Sellers in good condition without necessity of court action. Should Buyer fail to vacate and court action is necessary to regain possession of the property and the stock of the Corporation, and Sellers are successful in regaining possession of such property and/or stock of the Corporation, then Buyer Corporation and William R. Smith personally shall be liable for all damages and expenses incurred by Sellers in regaining possession of the same including interest, court costs, attorney's fees and any loss of business, if any; by reason of any delay in regaining possession of the same.

Chapter 82 also provides the remedy that Gentry and Johnston should have pursued to regain possession: an action for unlawful detainer.[6] It was to avoid precisely the type of repossession undertaken by the sellers here that Chapter 82 was enacted.

> The entry and detainer action is designed to compel the party out of actual possession, whether the real owner and as such entitled to the *ultimate* right of possession, or not, to respect the actual *present* possession of another, wrongful though it might be, by requiring him, in order to obtain the possession he claims to be his, to resort to legal channels, such as a suit for ejectment, or trespass to try title, or removal of tenant proceedings under Sec. 83.20 et seq.

Floro v. Parker, 205 So.2d at 367. Gentry and Johnston chose to ignore these legal alternatives, and to take possession of the motel summarily. This they could not legally do, regardless of the contract provision authorizing self-help tactics. See Adelhelm v. Dougherty, 176 So. at 777; Ardell v. Milner, Fla.Ct. App.1964, 166 So.2d 714, 716.[7] Coupled with Smith's failure to perform, the repossession provided sufficient grounds for the district court to find that the contract was mutually rescinded and abandoned.

### III.

Having reached the conclusion that the contract of sale had been rescinded by mutual consent, the district court went on to award Gentry and Johnston $65,000 in damages to compensate for expenses incurred as a result of Smith's operation of the motel. The court made no provision, however, to restore to Smith the sums of money he expended while he was in control of the corporation, although the corporation unquestionably benefitted from these expenditures. In failing to return the individual contracting parties to their pre-contract position, the district court improperly applied Florida law.

As the Supreme Court of Florida held in Lang v. Horne, 1945, 156 Fla. 605, 23 So.2d 848, 853:

> It is the well settled law of this State that a party who rescinds an agreement must place the opposite party in status quo, McDonald v. Sanders, 103 Fla. 93, 137 So. 122, 126; and where restoration is impossible [the] contract cannot be rescinded. Pryor v. Oak Ridge Dev. Corp., 97 Fla. 1085, 119 So. 326; Williams v. Penn Mutual Life Ins. Co., D.C., 6 F.2d 322; Cox v. Grose, 97 Fla. 848, 122 So. 513.

This rule has long been the law of Florida, and has been applied in Florida contract actions by this Court. See Alegre v. Marine Motor Sales Corp., 5 Cir. 1956, 228 F.2d 713. Since it is inequitable to allow one party to a sales contract to retain both the subject matter of the transaction and the benefit conferred upon him by the other party, Florida insists that the interests of both parties be recognized and enforced. Savage v. Horne, 1947, 159 Fla. 301, 31 So.2d 477, 482; Zapetis v. Wills, Fla.Ct.App.1963, 156 So.2d 33, 36. Here, the district court order permits Gentry and Johnston to retain both the stock they had

---

6. Fla.Stat.Ann. § 82.04 (Supp.1973), as amended, provides:

   "If any person enters or has entered in a peaceable manner into any lands or tenements when the entry is lawful and after the expiration of his right continues to hold them against the consent of the party entitled to possession, the party so entitled to possession is entitled to the summary procedure under section 51.011, Florida Statute, at any time within three (3) years after the possession has been withheld from him against his consent."

7. The *Ardell* court explicitly rejected the notion that Florida's policy against self-help repossession could be thwarted by contract:

   > It appears that Ch. 83, Fla.Stat., F.S.A., provides for summary remedies by which a landlord may speedily regain possession and said remedy is *exclusive* of the right of the landlord to make a forcible entry, even though the lease contains a provision permitting the landlord to re-enter.

   166 So.2d at 716.

contracted to sell and the benefits of Smith's management and expenditures on corporate obligations. Smith, on the other hand, is to receive no reimbursement for such expenditures and must pay $65,000 in damages besides.

We reverse the judgment as to damages, and remand the cause to the district court for an accounting as outlined below.

### IV.

Concluding as we have that the district court erred in its assessment of the damages, we are left with the task of determining how this action might best be brought to a just and expeditious resolution. It is clear from statements made by both counsel at oral argument that without a precise accounting among the parties to the contract, an accurate calculation of damages is impossible. Smith, for his part, maintains that his contributions to the corporation far exceed any amount the sellers and the corporation were required to expend as a result of his period of control. Gentry and Johnston assert, however, that any benefit derived from Smith's tenure was conferred upon the corporation, and it is to it that Smith must look for restitution. This matter, they contend, has no relation to Smith's liability to them for their expenditures on obligations that he incurred.

To complicate matters further, the corporation is not presently a party to this action, and unless it is joined, any accounting will be incomplete and another suit will be necessary. The appellant has instituted such a separate action in the Southern District of Florida, and seeks to recover the sums he advanced to the corporation. Many of the issues that will arise in this new action will already have been litigated in the instant case. If that action is consolidated with the present suit or the corporation

joined as a plaintiff-counterdefendant the likelihood of a consistent and proper three-way accounting will be increased.

Gentry and Johnston resist any suggestion of joinder or consolidation on the ground that it was only after a trial had been conducted and findings issued that Smith sought to join the corporation. Previously, they point out, he had actively opposed its addition. Whatever the force of such arguments, the context of Smith's delay in filing his motion is also crucial. Here, his trial counsel, who had resisted joining American Motor Inns of Florida, Inc., abruptly withdrew from the practice of law after trial, and Smith was required to retain new attorneys. Shortly after they had been retained, and before judgment was entered, his new attorneys moved to join the corporation as a plaintiff-counterdefendant. It is difficult to see how they could have moved to add the corporation at an earlier time. In these circumstances, the interests of justice and judicial economy would be served by joinder or consolidation, notwithstanding the tardiness of the motion to add a party.

The flexible approach adopted by the Federal Rules of Civil Procedure, Fed. R.Civ.P. 13(h), as amended in 1966, explicitly permits persons not originally parties to an action to be made parties to a counter-claim or crossclaim according to the general joinder provisions of Fed.R.Civ.P. 19 and 20. See Advisory Committee's Note to Proposed Rule 13, 1966, 39 F.R.D. 79. Thus consideration of Smith's post-trial motion to join American Motor Inns of Florida, Inc. is governed by Rule 19 [8] and the cases decided thereunder.

In deciding joinder motions under Rule 19,[9] courts emphasize pragmatic considerations rather than rigid formalism: the maximum effective relief with the minimum expenditure of

---

8. Discussion of permissive joinder under Rule 20 is unnecessary since we hold that the stricter standards of Rule 19 are met.

9. Rule 19 reads, in pertinent part:
Joinder of Persons Needed for Just Adjudication

(a) Persons to be Joined if Feasible. A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete re-

judicial energy. Schutten v. Shell Oil Co., 5 Cir. 1970, 421 F.2d 869, 873; Broussard v. Columbia Gulf Trans. Co., 5 Cir. 1968, 398 F.2d 885, 888; Advisory Committee's Notes to Proposed Rule 19, 1966, 39 F.R.D. 89, 90. This concern with the practical gives the district judge wide latitude in deciding when the promise of a speedy resolution to a controversy in a single action outweighs any inconvenience to the parties caused by a failure to conform strictly to the requirements of pleading. Broussard v. Columbia Gulf Trans. Co., 398 F.2d at 889. Nor does the mere fact of delay in seeking to join a party limit the exercise of this discretion. As Judge Tuttle, sitting by designation in the Sixth Circuit observed, "[i]t is permissible to join . . . a defendant *at any stage* of the litigation in the trial court so long as it is given sufficient notice and opportunity adequately to defend its interests." Boles v. Greeneville Housing Authority, 6 Cir. 1972, 468 F.2d 476, 480 n. 6 (emphasis added). In the present case, the joinder of the Florida corporation is feasible, desirable and would not destroy the district court's diversity jurisdiction. Furthermore, since its two officers and sole shareholders

are already parties to the action, no conceivable prejudice to the corporation's interests could arise from the lateness of the order of joinder. In such circumstances, the late date of the submission of the motion cannot be conclusive.

Nevertheless, we do not direct the district court to grant the appellant's motion to join the corporation. The disposition of such motions is within the district court's discretion. Our concern is that there be a just computation of damages. Thus we hold only that even should the district court deny the appellant's motion, the fact that the trial has already been completed need not deter a proper accounting. On its own motion, the court may order that the corporation be added as a party under the provisions of Fed.R.Civ.P. 21.[10] In terms, Rule 21 provides that the parties may be added by the court "at any stage of the action and upon such terms as are just". This language has been held to permit joinder of a party more than two years after commencement of the action,[11] after trial,[12] and even on appeal.[13] Rule 21 could, therefore, be applied productively here.

Perhaps the best course, however, is offered by Fed.R.Civ.P. 42(a),[14]

lief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and his joinder would render the venue of the action improper, he shall be dismissed from the action.

10. Rule 21 provides:
Misjoinder and Non-Joinder of Parties
Misjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added by order of the court on motion of any party or of its own initiative

at any stage of the action and on such terms as are just. Any claim against a party may be severed and proceeded with separately.

11. Halladay v. Verschoor, 8 Cir. 1967, 381 F.2d 100.

12. Reichenberg v. Nelson, D.Neb., 1970, 310 F.Supp. 248.

13. Mullaney v. Anderson, 1952, 342 U.S. 415, 72 S.Ct. 428, 96 L.Ed. 458 (party added by Supreme Court); Anglo Canadian Shipping Co., Ltd. v. United States, 9 Cir. 1956, 238 F.2d 18 (party added by Court of Appeals).

14. Rule 42(a) provides:
Consolidation; Separate Trials
a. Consolidation. When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

authorizing a district court to consolidate actions pending before it involving a common question of law or fact. The stated purpose of Rule 42(a) is to "avoid unnecessary costs or delay", and hence the decision to invoke the rule is entirely within the discretion of the district court as it seeks to promote the administration of justice. Fed.R.Civ.P. 42(a); Stemler v. Burke, 6 Cir. 1965, 344 F.2d 393, 396; Ellerman Lines, Ltd. v. Atlantic Gulf Stevedores, Inc., 3 Cir. 1964, 339 F.2d 673, 675, cert. denied, 1965, 382 U.S. 812, 86 S.Ct. 23, 15 L. Ed.2d 60; Whiteman v. Pitrie, 5 Cir. 1955, 220 F.2d 914, 917–918; Davis v. Yellow Cab Co., 5 Cir. 1955, 220 F.2d 790, 791. In this Circuit, district judges have been "urged to make good use of Rule 42(a) . . . in order to expedite the trial and eliminate unnecessary repetition and confusion". Dupont v. Southern Pacific Co., 5 Cir. 1966, 366 F.2d 193, 195, cert. denied, 1967, 386 U. S. 958, 87 S.Ct. 1027, 18 L.Ed.2d 106. Should the district court here choose to consolidate this action with that instituted by Smith against the corporation, considerable confusion and repetition could be avoided. Therefore, although Smith's action against the corporation was not begun until this case was on appeal, the district judge would not abuse his discretion by ordering consolidation.

In summary, the findings of the district court as to mutual breach and rescission of the contract are affirmed. The finding of the trial court as to damages is reversed, and the cause remanded so that a full accounting may be had among the parties to this action and American Motor Inns of Florida, Inc., the corporation to be made a party to the accounting as the district court shall direct. Our disposition of the case makes it unnecessary to consider the other points raised by the parties in their briefs.[15]

15. One issue does deserve a brief comment. The appellant contends that remarks by the district court judge during the course of the trial indicate that he had decided the case in favor of the plaintiff-appellees before the defendant-appellant had presented his evidence. The comments he cites from the transcript are merely tentative, precatory remarks by the trial judge and furnish no evidence of prejudgment.